**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**
**(Civil Division)**

| | | |
|---|---|---|
| **ESAU MUHAMMAD,**<br>424 Possum Court<br>Capitol Heights, MD 20743,<br><br>Plaintiff,<br><br>v.<br><br>**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY,**<br>600 Fifth Street, N.W.<br>Washington, DC 20001,<br><br>Defendant. | ) | Civil Action No. ________________<br><br>**Jury Requested** |

## COMPLAINT

**COMES NOW** Plaintiff, Esau Muhammad (hereinafter "Plaintiff" or "Mr. Muhammad"), by and through his undersigned counsel, and sues Washington Metropolitan Area Transit Authority (hereinafter "WMATA" or "Defendant"), and for cause of action states, as follows:

## NATURE OF THE CASE

1. Plaintiff Esau Muhammad (hereinafter "Plaintiff" or "Mr. Muhammad") brings this civil action pursuant to Title VII of the Civil Rights Act of 1964 (hereinafter "Title VII"), as amended, 42 U.S.C. § 2000e, *et seq.*, for relief from Defendant's discriminatory conduct and harassment towards Plaintiff on the bases of his race and national origin, as well as Defendant's retaliation for Plaintiff's protected activity.

**JURISDICTION AND VENUE**

2. This Court has jurisdiction over this Complaint pursuant to 28 U.S.C. § 1331, as it asserts a claim that arises under laws of the United States, specifically Title VII.

3. Venue is appropriate and based on the fact that a substantial part of the actions complained of are the result of actions and the employment practices of Defendant, a municipality within the District of Columbia. *Id.*

**EXHAUSTION OF REMEDIES**

4. Plaintiff has exhausted all of his administrative remedies.

5. On or about November 15, 2016, Plaintiff timely contacted the Equal Employment Opportunity Commission (hereinafter "EEOC") and filed a formal complaint against Defendant, alleging hostile work environment and discrimination on the bases of his race and national origin, as well as Defendant's retaliation for Plaintiff's protected activity.

6. On January 11, 2017, Plaintiff participated in an initial interview with EEOC Investigator Christian M. Laureno-DeJesus.

7. On or about February 28, 2017, Plaintiff submitted a Form 5 Charge bearing Agency No. 570-2017-00277 to the EEOC alleging that WMATA had violated Title VII and the DCHRA due to discrimination based upon his race (African-American) and national origin (Trinidadian), hostile work environment, and retaliation for filing a complaint of sexual harassment, a protected activity.

8. On March 8, 2017, Plaintiff received a "Notice of Right to Sue" from the EEOC, which provided him the right to institute a civil action in federal District Court under Title VII within ninety (90) days.

9. On May 30, 2017, Plaintiff timely filed his action within ninety (90) days after receipt of the EEOC's "Notice of Right to Sue."

**PARTIES**

10. Plaintiff is currently domiciled at 424 Possum Court, Capitol Heights, MD 20743. Plaintiff is a resident of the State of Maryland and a United States citizen.

11. Defendant, WMATA, is an instrumentality created by Congress to operate a mass transit system in the District of Columbia and the surrounding Metropolitan area and is subject to suit for the negligent, discriminatory, wanton, willful or wrongful acts and/or omissions of its employees or agents and is therefore liable, pursuant to the doctrine of *Respondeat Superior*.

**FACTUAL BACKGROUND**

12. Plaintiff incorporates all information and allegations contained in the preceding paragraphs, as if fully set forth herein.

13. At all times relevant to the claims made herein, Plaintiff was a Fleet Servicer D at WMATA.

14. Plaintiff was hired in September 2014.

15. Plaintiff's current direct supervisor is Stephen Pearson ("Mr. Pearson") and his second line supervisor is Barry Williams ("Mr. Williams"). However, Patrick Elam ("Mr. Elam") was Plaintiff's supervisor previously.

16. Plaintiff's national origin is Trinidadian.

17. In or around January 2015, Mr. Elam, Plaintiff's immediate supervisor, refused to train Mr. Muhammad and told him that he was "on his own."

18. In or around March 10, 2015, Mr. Elam stated to Mr. Muhammad that "foreigners stink."

19. Between March 2015 and October 2015, whenever Mr. Muhammad asked a question in the regular toolbox meetings, Mr. Elam would disregard his question, while acknowledging other employees' questions or statements.

20. In or around April 2015, Mr. Elam removed Mr. Muhammad from the over-time sheet, telling Mr. Muhammad that it was a privilege, thus eliminating his option to work overtime like hi co-workers.

21. In or around June 2015, Mr. Elam threatened to beat up Mr. Muhammad, telling him to meet him outside of work.

22. Between June and July 2015, Mr. Barry Williams, Plaintiff's second line supervisor, in response to Mr. Muhammad's complaints of unfair treatment, told Mr. Muhammad to keep his mouth shut and then his problems would go away.

23. In or around July 2015, Mr. Muhammad was called into Mr. Elam's office after Mr. Muhammad had asked about procedures and was told to never question Mr. Elam again.

24. On or around July 2015, Mr. Elam informed Mr. Muhammad that he [Mr. Elam] was working to get Mr. Muhammad fired.

25. On or around April 7, 2016 Mr. Jordan Worley, co-worker, accosted Mr. Muhammad in an aggressive and improper manner during a toolbox meeting and Mr. Elam did and said nothing.

26. On or around April 9, 2016 Mr. Muhammad was accosted and threatened in the parking lot by two co-workers and three non-co-workers. When he complained about it to management, management did nothing to address or investigate his complaint.

27. On or around May 4, 2016, Mr. Muhammad was suspended for three days and was given a work place violence write up without pay for three additional days.

28. On or around May 2016, Mr. Williams and Mr. Elam blocked Mr. Muhammad from a promotion to Fleet Servicer.

29. On or about May 16, 2016, Mr. Worley returned to work and began harassing Mr. Muhammad by giving him aggressive looks and standing next to Mr. Muhammad's car during the lunch break. Mr. Muhammad complained to Mr. Williams, who never took any action.

30. On or around June 2016, Mr. Muhammad discovered that his name had been scratched off the schedule and the word "gay" was written on his time card and personal vehicle.

31. On or about July 2016, Mr. Elam informed Corey Moore, a co-worker, not to stand near Mr. Muhammad because he [Mr. Muhammad] would be fired soon.

32. On or around July 2016, Mr. Elam threatened Mr. Muhammad during a toolbox meeting when he screamed at him and demanded his home address.

33. On or around July 2016, Mr. Elam made an unjustified threat to write up Mr. Muhammad unjustifiably for contacting and requesting that a shop steward attend the regular toolbox meeting.

34. In between July 2016 and August 2016, the Agency failed to pay Mr. Muhammad for hours worked and when Mr. Muhammad complained, Mr. Patrick Elam told him to "deal with it."

35. On or around August 2016, Mr. Elam informed Mr. Muhammad that he would not be getting an evaluation for 2015-2016 because Mr. Muhammad did not deserve one.

36. On or around August 2016, Mr. Elam screamed at Mr. Muhammad not to service the buses as was Mr. Muhammad's job, but rather to scrub wheels of each bus.

37. On or around August 2016, Mr. Muhammad was not provided the two days leave he required for medical attention after Mr. Elam threatened him.

38. On or around August 2016, Mr. Elam sent Mr. Muhammad home from work stating that he did not "appear well," yet failed to allow Mr. Muhammad to use sick leave for the time.

39. On or around September 6, 2016 Mr. Elam denied Mr. Muhammad leave, which resulted in Mr. Muhammad being denied nineteen days without pay.

40. On or about September 2016, Mr. Williams denied Mr. Muhammad a meeting with him to discuss Mr. Muhammad's safety concerns.

41. On or about September, 2016 Mr. Elam compared Mr. Muhammad to President Donald Trump by stating that Mr. Muhammad had the same mentality as President Trump, but that President Trump would be soon getting rid of foreigners.

42. On or about October 12, 2016, days after Mr. Muhammad had chosen not to deal with Mr. Elam while Mr. Elam being disrespectful to him, Mr. Muhammad was sent for a "random" drug test.

43. On or about October 26, 2016, Mr. Muhammad believes that Mr. Elam changed documents to not accurately reflect the amount of time Mr. Muhammad spent getting to the drug testing site, trying to suggest that Mr. Muhammad had not gone straight there, despite knowing that Mr. Muhammad had complied with all rules and regulations.

44. On or about October 29, 2016 Mr. Muhammad received threatening text messages from Jerrell Williams, a co-worker, stating that he should "make peace with God" and that Mr. Muhammad would be cut from all promotions and overtime. Mr. Muhammad reported the texts to management, but nothing was ever done.

45. On or about December 7, 2016, Mr. Muhammad was standing talking to Corey Moore, when Andrea Clentrais, co-worker, approached them and stated that they were talking about her, which they were not.

46. Minutes later, on December 7, 2016, Ms. Clentrais crashed a bus and blamed Mr. Muhammad despite him being in a different part of the building at the time of the crash. Ms. Clentrais charged towards Mr. Muhammad in an aggressive manner, ripping off her shirt and screaming.

47. On or about December 12, 2016, Mr. Muhammad was informed that he was under investigation for the bus accident Ms. Clentrais caused and was told by Mr. Williams not to speak to her.

48. On or about January 2017, Mr. Williams rejected Mr. Muhammad for a promotion, stating that Mr. Muhammad would not be promoted until the Fall of 2017.

49. On or about January 10, 2017, Mr. Williams called Mr. Muhammad into a meeting and told him to "come to work and keep your mouth shut." Mr. Williams instructed Mr. Muhammad not to assist co-workers and to not speak to anyone.

50. On or about January 6, 2017, Mr. Marcus Weatherby, lead-man, instructed Mr. Muhammad to leave the bus he was working on and go home despite Mr. Muhammad already being approved for overtime to work on that bus.

51. On or about January 18, 2017 Mr. Antonio Washington, supervisor approached Mr. Muhammad and said, "What's the problem? You can't speak when you see authority?" Mr. Muhammad was abiding by Mr. Williams' instructions not to speak to anyone.

52. On or about February 6, 2017 Mr. Williams ordered Mr. Muhammad to take another drug test stating it was random, despite the fact that he had just taken one in October 2016.

53. On or about February 9, 2017 Mr. Carl Barnes failed to properly notify Mr. Williams that Mr. Muhammad was going to the hospital with his wife, despite Mr. Muhammad properly filing his leave request.

54. Since April 2016, continuing to the filing of this action, Mr. Muhammad feels that he must leave the building with a "buddy" for his protection since WMATA has never responded to the incident where Mr. Muhammad was accosted.

55. Since 2014, Defendant has failed to promote Mr. Muhammad.

56. Mr. Muhammad's last performance evaluation was received in February 2015, wherein Mr. Muhammad received an "Excellent" rating.

## CAUSES OF ACTION

### COUNT ONE
### (Discrimination on the Basis of Race)

57. Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth, herein.

58. As an African-America, Plaintiff is a member of a protected class.

59. Because of his race (African-American), Plaintiff was subjected to the unlawful conduct and adverse actions alleged throughout this Complaint, including, but not limited to, denied overtime, failed to respond and/or address Plaintiff's complaints of being accosted at work, made racially derogatory statements towards Plaintiff, unjustifiably suspended Plaintiff, denied Plaintiff promotion opportunities, failed to pay Plaintiff for hours worked, failed to provide Plaintiff with an evaluation, denied him leave unjustifiably, subjected him to a drug test,

lied about Plaintiff's time to get to the drug test, and subjected him to another drug test shortly thereafter, failed to respond to co-worker's threats of physical violence towards Plaintiff, and isolated Plaintiff from all other employees by telling him not to speak to anyone at work.

60. Defendant's forgoing unlawful adverse actions materially affected the terms, privileges, and conditions of Plaintiff's employment since he was denied promotional opportunities, overtime, was suspended, and other actions as described above.

61. Defendant knew that Plaintiff is African-American prior to subjecting him to the aforementioned material adverse employment actions and was aware of the discrimination Plaintiff was subjected because of his race (African-American).

62. Plaintiff has been treated differently and subjected to different terms and conditions of his employment due to his race (African American).

63. Defendant has limited, segregated and classified Plaintiff in a way that deprived him of employment opportunities and otherwise adversely affected his status as an employee because of his race (African American).

64. Similarly situated non-African American employees have not been subjected to the actions as described above, for having the same or similar or more egregious misconduct.

65. Plaintiff's race (African-American) was a determining factor in Defendant's unlawful conduct toward Plaintiff.

66. Plaintiff's race (African-American) was a motivating factor in Defendant's unlawful conduct toward Plaintiff.

67. The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot further offer any legitimate reason for its unlawful conduct.

68. Defendant discriminated against Plaintiff because of his race (African American) by engaging in, tolerating or failing to prevent discrimination and by failing to take affirmative action to correct and redress the unlawful employment practices perpetrated against Plaintiff.

69. As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury and monetary damages - including but not limited to past and future loss of income, benefits, promotion and promotional opportunities, career opportunities, medical expenses and costs - and is entitled to all available legal and equitable remedies.

70. Defendant's aforementioned conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of his race (African-American).

71. Due to Defendant's actions, Plaintiff was humiliated, embarrassed, and made to endure a great amount of pain and suffering and such impact is on-going and permanent in nature.

72. Plaintiff has incurred lost wages, loss of reputation, and loss of career opportunity, now and into the future, and all of the other losses without Plaintiff contributing any negligence thereto.

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court:

a. Award compensatory damages;

b. Damages and equitable relief for all harm Plaintiff has sustained as a result of Defendant's unlawful conduct including for loss of promotional potential, reputation, lost wages, lost job benefits he would have received but for Defendant's unlawful conduct;

c. Award any medical costs and expenses incurred as a result of Defendant's unlawful conduct;

d. Award reasonable attorney fees, costs, and expenses incurred for this action;

e. Order Defendant to institute a policy and procedure to be implemented against discrimination;

f. Equal Employment Opportunity training for Defendant and the supervisory officials at issue herein;

g. Supervisory training for the supervisors at issue herein;

h. Award equitable, declaratory, and injunctive relief; and

i. Award such other and further relief as this Honorable Court deems just and proper.

## COUNT TWO
## (Discrimination on the Basis of National Origin)

73. Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth, herein.

74. Plaintiff is a member of a protected class because his nation of origin is Trinidad.

75. Because of his national origin (Trinidadian), Plaintiff was subjected to the unlawful conduct and adverse actions alleged throughout this Complaint, including, but not limited to, denied overtime, failed to respond and/or address Plaintiff's complaints of being accosted at work, made racially derogatory statements towards Plaintiff, unjustifiably suspended Plaintiff, denied Plaintiff promotion opportunities, failed to pay Plaintiff for hours worked, failed to provide Plaintiff with an evaluation, denied him leave unjustifiably, subjected him to a drug test, lied about Plaintiff's time to get to the drug test, and subjected him to another drug test

shortly thereafter, failed to respond to co-worker's threats of physical violence towards Plaintiff, and isolated Plaintiff from all other employees by telling him not to speak to anyone at work.

76. Defendant's forgoing unlawful adverse actions materially affected the terms, privileges, and conditions of Plaintiff's employment since he was denied promotional opportunities, overtime, was suspended, and other actions as described above.

77. Defendant knew that Plaintiff is Trinidadian prior to subjecting him to the aforementioned material adverse employment actions and was aware of the discrimination Plaintiff was subjected because of his national origin (Trinidadian).

78. Plaintiff has been treated differently and subjected to different terms and conditions of his employment due to his national origin (Trinidadian).

79. Defendant has limited, segregated and classified Plaintiff in a way that deprived him of employment opportunities and otherwise adversely affected his status as an employee because of his national origin (Trinidadian).

80. Similarly situated non-Trinidadian employees have not been subjected to the actions as described above, for having the same or similar or more egregious misconduct.

81. Plaintiff's national origin (Trinidadian) was a determining factor in Defendant's unlawful conduct toward Plaintiff.

82. Plaintiff's national origin (Trinidadian) was a motivating factor in Defendant's unlawful conduct toward Plaintiff.

83. The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot further offer any legitimate reason for its unlawful conduct.

84. Defendant discriminated against Plaintiff because of his national origin (Trinidadian) by engaging in, tolerating or failing to prevent discrimination and by failing to take

affirmative action to correct and redress the unlawful employment practices perpetrated against Plaintiff.

85. As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury and monetary damages - including but not limited to past and future loss of income, benefits, promotion and promotional opportunities, career opportunities, medical expenses and costs - and is entitled to all available legal and equitable remedies.

86. Defendant's aforementioned conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of his national origin (Trinidadian).

87. Due to Defendant's actions, Plaintiff was humiliated, embarrassed, and made to endure a great amount of pain and suffering and such impact is on-going and permanent in nature.

88. Plaintiff has incurred lost wages, loss of reputation, and loss of career opportunity, now and into the future, and all of the other losses without Plaintiff contributing any negligence thereto.

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court:

a. Award compensatory damages;

b. Damages and equitable relief for all harm Plaintiff has sustained as a result of Defendant's unlawful conduct including for loss of promotional potential, reputation, lost wages, lost job benefits he would have received but for Defendant's unlawful conduct;

c. Award any medical costs and expenses incurred as a result of Defendant's unlawful conduct;

d. Award reasonable attorney fees, costs, and expenses incurred for this action;

e. Order Defendant to institute a policy and procedure to be implemented against discrimination;

f. Equal Employment Opportunity training for Defendant and the supervisory officials at issue herein;

g. Supervisory training for the supervisors at issue herein;

h. Award equitable, declaratory, and injunctive relief; and

i. Award such other and further relief as this Honorable Court deems just and proper.

## COUNT THREE
## (Hostile Work Environment)

89. Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth, herein.

90. Plaintiff has exhausted his administrative remedies under Title VII of the Civil Rights Act of 1964, as amended.

91. Defendants are "persons" within the meaning of 42 U.S.C. § 1983.

92. At all times relevant to this Complaint, Defendants and their agents were acting under color of the laws, customs and usages of the District of Columbia within the meaning of 42 U.S.C. § 1983.

93. During his employment, Plaintiff was subjected to comments regarding his race and national origin, such as, but not limited to, "foreigners stink."

94. This conduct and other incidents of harassment described above were because of Plaintiff's race, national origin, and/or protected EEO activity.

95. The harassment directed at Plaintiff was either intended to cause him severe emotional distress or was perpetrated with malice or reckless indifference to the likelihood that it would cause such distress. Defendant is, therefore, liable to Plaintiff for all damages proximately resulting from the distress he has suffered relating to the conduct of Defendant.

96. Due to Defendant's actions, Plaintiff was humiliated, embarrassed, and made to endure a great amount of pain and suffering and such impact is on-going and permanent in nature.

97. Plaintiff has incurred lost wages and loss of career opportunity, now and into the future, without Plaintiff contributing any negligence thereto.

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court:

a. Award compensatory damages;

b. Damages and equitable relief for all harm Plaintiff has sustained as a result of Defendant's unlawful conduct including for loss of promotional potential, reputation, lost wages, lost job benefits he would have received but for Defendant's unlawful conduct;

c. Award any medical costs and expenses incurred as a result of Defendant's unlawful conduct;

d. Award reasonable attorney fees, costs, and expenses incurred for this action;

e. Order Defendant to institute a policy and procedure to be implemented against discrimination;

f. Equal Employment Opportunity training for Defendant and the supervisory officials at issue herein;

g. Supervisory training for the supervisors at issue herein;

h. Award equitable, declaratory, and injunctive relief; and

i. Award such other and further relief as this Honorable Court deems just and proper.

## COUNT FOUR

**Retaliation Based Upon Prior Protected Activity**

42 U.S.C. § 2000e-2(a)(1)

98. Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth, herein.

99. Defendants are "persons" within the meaning of 42 U.S.C. § 1983.

100. At all times relevant to this Complaint, Defendants and their agents were acting under color of the laws, customs and usages of the District of Columbia within the meaning of 42 U.S.C. § 1983.

101. Plaintiff has exhausted her administrative remedies under Title VII of the Civil Rights Act of 1964, as amended.

102. Plaintiff complained verbally and in writing to WMATA management and officials regarding his belief that he was being subjected to hostile work environment and discriminatory conduct based upon his race and national origin.

103. Plaintiff filed a complaint with the EEOC regarding his claims of discrimination based upon race and national origin, as well as retaliation for his participation in protected activity.

104. Defendant subjected Plaintiff to the aforementioned adverse employment actions because of his participation and opposition to unlawful and discriminatory employment practices in violation of Title VII, Section 1983.

105. The adverse retaliatory actions to which Plaintiff has been subjected are a direct result of Plaintiff having previously engaged in protected EEO activity.

106. Similarly situated employees (no known prior EEO activity) were not subjected to the same, similar, or any other adverse treatment.

107. Other employees who were similarly situated, but members of a different protected class than Plaintiff, have received different terms and conditions of employment.

108. Defendant's unlawful conduct has created a climate of fear and intimidation for Plaintiff and other employees, which creates a chilling effect upon other employees' willingness to engage in protected activity.

109. Defendant's unlawful conduct negatively impacted the terms, conditions, and privileges of Plaintiff's employment.

110. Defendant's retaliatory conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of his participation and opposition to Defendant's discriminatory conduct.

111. Defendant is directly liable for the discriminatory acts or omissions of its agents, servants, and employees while acting within the course and scope of their employment, under the theory of *Respondeat Superior*.

112. As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury, and monetary damages – including, but not limited to, past and future loss of income, benefits, promotion and promotional

opportunities, career opportunities, medical expenses and costs – and is entitled to all available legal and equitable remedies.

113. Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering.

114. Plaintiff has incurred lost wages, loss of reputation and loss of career opportunity, now and into the future, without Plaintiff contributing any negligence thereto.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court:

a. Order the Defendant to reassign Plaintiff to a new position with new first-line supervision;

b. Order the Defendant institute a policy and procedure to be implemented against discrimination;

c. Equal Employment Opportunity training for Defendant and the supervisory officials at issue herein;

d. Supervisory training for the supervisors at issue herein; and

e. Award compensatory damages in excess of Thee Hundred Thousand Dollars ($300,000.00);

f. Award medical costs and expenses incurred as a result of Defendant's unlawful conduct;

g. Award lost wages;

h. Award back pay and benefits, with interest;

i. Award future wages;

j. Award reasonable attorney fees, costs, and expenses incurred for this action;

k. Award equitable, declaratory, and injunctive relief; and

l. Award such other and further relief as this Honorable Court deems just and proper.

**Equitable Relief**

115. Plaintiff hereby incorporates, by reference hereto, the facts, law, and/or allegations contained within the preceding paragraphs, as fully set forth herein.

116. Because of the actions alleged herein, the continued employment of the supervisors at issue herein without training in equal employment opportunity law, rules and regulations, clear and present dangers to the employees of Defendant and could result in further illegal actions on the party of Defendant, by and through its agents, servants, and employees.

**JURY DEMAND**

Pursuant to Fed. R. Civ. P. 38, Plaintiff demands trial by jury on all issues so triable.

May 30, 2017

Respectfully submitted,

By: Stephanie Rapp-Tully (Bar No. 1016900)

Tully Rinckey, PLLC
815 Connecticut Ave., N.W.,
Suite 720
Washington, DC 20006
(202) 787-1900
SRappTully@fedattorney.com

*Counsel for Plaintiff*